**E-FILED on**   3/9/06

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEPHEN ABEL,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>　　　　　Defendant. | No. C-04-03961 RMW<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>**[Re Docket Nos. 15, 25, 37]** |

　　　Plaintiff Stephen Abel ("Abel") has sued defendant International Business Machines Corporation ("IBM") for breach of contract. IBM moves for summary judgment. Abel opposes the motion. Abel has moved to modify the Case Management Order or extend the discovery cut-off. IBM opposes the motion. The court heard oral argument on February 10, 2006. At the hearing, the court tentatively granted IBM's motion for summary judgment and granted in part and denied in part Abel's motion. The court ordered the parties to make further submissions. They have now done so. After considering these submissions, in addition to the moving and responding papers and counsels' arguments, the court grants IBM's motion.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
—C-04-03961 RMW
DOH

# I. BACKGROUND

Abel worked at IBM as a project manager and systems administrator for twenty-eight years. Abel Decl. Supp. Opp. Mot. Sum. J. ("Abel Decl.") ¶ 3. In March 2001, he proposed a plan for a "guaranteed bridge to retirement" to his manager, Paul Hafner ("Hafner"). *Id*. at ¶ 4. Under the plan, Abel would take an unpaid leave of absence until November 2003 — when his retirement benefits would vest — in return for a promise that IBM would not terminate his employment. Abel claims that Hafner then "assured [him] that the bridge to retirement would work, but it had to be done with the standard IBM Leave of Absence Form." *Id*. at ¶ 7.

On March 15, 2001 Hafner e-mailed Abel this Form. It stated that Abel's "request for a Personal Leave of Absence Work Option has been approved" and that his leave "will begin on March 31, 2001 and . . . end on March 29, 2002." Hafner Decl. Ex. A. It also provided that (1) Abel's leave "may end earlier" because of "business conditions," which "could mean a return to regular employment" and (2) IBM "may, to the extent permitted by law, terminate your leave status and your employment." *Id*. On March 29, 2001 Hafner sent Abel a letter "re-confirming" these terms. *See* Hafner Decl. Ex. B.

Abel contends that he spoke to Hafner after receiving the Forms. Abel Decl. ¶ 7. Abel asserts that Hafner called his plan "a sure thing" and promised to place a letter in his personnel file "so that any new manager would be aware of our agreement to bridge your retirement." *Id*. at ¶ 8.[1] Hafner allegedly reinforced Abel's impression that IBM would extend his leave of absence until November 2003 by stating "have a nice retirement." *Id*. at ¶ 10. In addition, Abel claims that James

---

[1] Hafner disputes that he ever "ma[d]e such an agreement." Hafner Decl. Supp. Mot. Sum. J. ¶¶ 8, 9. IBM also objects that Abel's recollection of what Hafner said is inadmissible hearsay. The court disagrees. Hafner's promise to place a letter in Abel's employment file falls within two exceptions to the hearsay bar. It is a statement of intent under Fed. R. Evid. 803(3) and a "statement . . . offered against a party and . . . [made] by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship" under Fed. R. Evid. 801(d)(2)(D).

1  Chapdelaine ("Chapdelaine"), Hafner's supervisor, said "[c]ongratulations and [g]ood [l]uck with
2  your retirement." *Id.* at ¶ 16.[2]
3       Abel believed that he "had to call every year to extend [his] bridge to retirement." *Id.* at ¶
4  11. In March 2002, he asked his new manager, Paul Mowry ("Mowry") to extend his leave. Mowry
5  Decl. Supp. Mot. Sum. J. ("Mowry Decl.") ¶ 3. According to Mowry, Abel stated that "he was
6  hoping to extend his leave of absence until he was eligible for retirement." *Id.* at ¶ 5. Mowry
7  contends that he explained to Abel that "he would receive an extension for only one year, and that he
8  would have to reapply for another extension at the end of that year if he wished to remain on leave."
9  *Id.*
10       On March 14, 2002 Mowry e-mailed Abel a letter approving his leave of absence through
11  March 12, 2003. Mowry Decl. Ex. A. The letter states that "[d]ue to business conditions, your leave
12  may end earlier," which "could mean a return to regular employment." *Id.* In addition, it provides
13  that "[t]he terms and conditions stated in the letter you received at the start of your leave apply
14  through your new leave end date, except to the extent they conflict with the provisions stated
15  above." *Id.* In June 2002, IBM reduced its workforce and fired Abel. Chapdelaine Decl. ¶ 11.
16       On February 11, 2005 the court held a Case Management Conference. Abel's counsel did not
17  appear. The Case Management Order set a fact discovery cut-off of December 1, 2005. Lawson
18  Decl. Supp. Opp. Mot. Disc. ("Lawson Decl.") ¶ 2. On November 15, 2005 Abel's counsel served a
19  request for production of documents on IBM. Perez Decl. Supp. Mot. Disc. ("Perez Decl.") Ex. A.
20  Abel's counsel sought, *inter alia*, Abel's employment file. *Id.* On December 2, 2005 IBM's counsel
21  wrote to Abel's counsel and informed him that because Federal Rule of Civil Procedure 34 entitles a
22  party to thirty days to produce documents, Abel's request was untimely. Lawson Decl. Ex. B. On
23  December 5, Abel's counsel informed IBM's counsel that (1) he had mis-calendared the fact
24  discovery deadline and (2) would file an *ex parte* motion unless IBM would stipulate to an
25  extension. Lawson Decl. Ex. C. That same day, IBM's counsel refused. Lawson Decl. Ex. D. On
26  December 9, IBM's counsel wrote to Abel's counsel and expressed concern that he was waiting to

---

[2] According to Chapdelaine, he only said "[c]ongratulations on your leave." Chapdelaine Decl. Supp. Mot. Sum. J. ¶ 5.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
—C-04-03961 RMW
DOH                                                                 3

file his *ex parte* motion until after the December 16 deadline for summary judgment motions, thus giving him a roadmap to IBM's legal theories. Lawson Decl. Ex. E. On December 16, IBM filed its summary judgment motion. On December 21, Abel filed an *ex parte* request to extend the discovery deadline.[3]

## II.  ANALYSIS

### A.  Abel's Breach of Contract Cause of Action

At the February 10 hearing, the court tentatively granted IBM's motion for summary judgment. The sections below explain why.

#### 1.  Summary Judgment Standard

Summary judgment is proper when there are no genuine issues as to any material fact and the movant is entitled judgment as a matter of law. *See* Fed. R. Civ. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). This court must regard as true the non-moving party's evidence, if supported by affidavits or other evidentiary material. *Id*. at 324. Where the moving party does not bear the burden of proof on an issue at trial, it may discharge its burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hospitals, Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

#### 2.  The Statute of Frauds

The statute of frauds dooms Abel's breach of contract claim. "[A]n agreement that by its terms is not to be performed within a year from the making thereof" is invalid unless it is "in writing and subscribed by the party to be charged or by the party's agent." Cal. Civ. Code § 1624(a)(1). Abel seeks damages for IBM's alleged breach of an oral agreement made in March 2001 not to fire him until November 2003. Neither party could have discharged its obligations until November

---

[3] Abel also filed an *ex parte* motion to shorten time for hearing on his discovery motion, which the court grants.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
—C-04-03961 RMW
DOH                                                                 4

2003: more than one year after March 2001.[4]  Because the alleged contract was not in writing and could not have been performed within one year of its making, it violates the statute of frauds. *See Pfeifer v. U.S. Shoe Corp.*, 676 F. Supp. 969, 975 (C.D. Cal. 1987) ("alleged oral agreement to employ [fifty-five year-old plaintiff] to the age of sixty-five is an agreement to employ to a fixed date more than one year in the future . . . and therefore, is barred by the statute of frauds").

Abel correctly notes that, under California law, "if a contract provides an option to terminate that *could* arise within a year, the statute of frauds does not apply." Opp. Mot. Sum. J. at 2:22-24 (emphasis in original).  Abel also notes that the Leave of Absence Forms states that his leave may end earlier and that IBM may fire him. *See* Hafner Decl. Exs. A, B; Mowry Decl. Ex. A.  According to Abel, because it was theoretically possible for IBM to terminate his leave and employment within a year after the parties agreed to the Leave of Absence Form, "the [s]tatute of [f]rauds simply does not apply to this agreement." Opp. Mot. Sum. J. at 3:16-20.

This argument lacks merit.  For one, the issue of whether the Leave of Absence Form contained a contingency that could have ended the contractual relationship less than one year after its inception is irrelevant.  Abel does not seek damages for breach of that agreement.  Instead, he contends that IBM breached a different contract: an oral agreement not to fire him for two years and eight months.  *See* Abel Decl. ¶ 15 ("[w]hen I accepted the unpaid leave of absence as a bridge to retirement, it was my understanding from Paul Hafner that I would not be terminated from my employment and that I would have a bridge to retirement"); Opp. Mot. Sum. J. at 4:2-3 (characterizing Hafner, Mowry, and Chadelaine's statements as an "oral side agreement").  By its terms, this agreement cannot be performed within one year and thus violates the statute of frauds. Moreover, even if Abel were correct, and the Leave of Absence Form somehow made performance possible within one year, then Abel cannot explain how IBM violated the terms of any contract. Indeed, to circumvent the statute of frauds, Abel would be relying on provisions that expressly authorize IBM to fire him at any time: the very step that he alleges breached the contract.

---

[4] The same is true even if the court construes Mowry's renewal of Abel's leave in March 2002 as somehow constituting a new promise not to fire him until November 2003.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
—C-04-03961 RMW
DOH                                          5

### 3. The Parol Evidence Rule

In addition, Abel's claim violates the parol evidence rule. "The execution of a contract in writing . . . supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." Cal. Civ. Code § 1625. "[E]ven where a contract is not fully integrated, parol evidence is not admissible to supply terms which are inconsistent with the written agreement." *Esbensen v. Userware Internat., Inc.*, 11 Cal. App. 4th 631, 637 n.3 (1992). "[E]vidence of a separate oral agreement may be introduced [only] as to any matter on which the agreement is silent and which is not inconsistent with its written terms." *BMW of North America, Inc. v. New Motor Vehicle Bd.*, 162 Cal. App. 3d 980, 991 n.4 (1984).[5] The Leave of Absence Form to which Abel agreed in March 2001 expressly states that IBM "may, to the extent permitted by law, terminate your leave status and your employment." Hafner Decl. Exs. A, B. IBM's alleged oral promise not to fire Abel until November 2003 directly contradicts this term and is therefore inadmissible.[6] The court thus grants IBM's motion for summary judgment.

### B. Abel's Motion to Modify the Case Management Order or Extend the Discovery Deadline

Abel moves to (1) push back the trial schedule and all its deadlines by four months or (2) extend the discovery cut-off date. Abel claims that his counsel "inadvertently calendared the [fact discovery] cut-off date for February 7, 200[6]." Mot. Disc. at 6:1. Federal Rule of Civil Procedure

---

[5] Abel relies on *Brawthen v. H & R Block Inc.*, 28 Cal. App. 3d 131 (1972) for the proposition that "a generalized termination provision may be subject to a valid oral side agreement" not to fire an employee "except under more narrowly defined 'for good cause' type conditions . . . ." Opp. Mot. Sum. J. at 4:2-5. However, Abel does not claim that IBM fired him without good cause. Instead, he contends that IBM breached an agreement not to fire him under any circumstances. Moreover, in *Brawthen*, the written employment contract at issue "did not expressly contradict the oral agreement." *Brawthen*, 28 Cal. App. 3d at 138. Here, the Leave of Absence Form, which permits IBM to terminate Abel's employment, is squarely at odds with the alleged oral promise not to do so until November 2003.

[6] There is some uncertainty about whether Hafner's alleged representations "preceded or accompanied the execution" of the Leave of Absence Form. Compare Abel Decl. ¶ 7 (Hafner's assurances that "the bridge to retirement would work" occurred "before I accepted the unpaid leave of absence") *with id*. at ¶ 10 (alleging that Hafner told him "not to worry" about the Leave of Absence Form but not specifying when this conversation took place). Nevertheless, even if Hafner's statements came after the parties signed the contract, it is undisputed that Abel executed another Leave of Absence Form in March 2002 that re-instituted "[t]he terms and conditions" of the March 2001 Leave of Absence Form. Mowry Decl. Ex. A. Under the parol evidence rule, this agreement supersedes the terms of any oral agreement on the same subject matter.

1  16(b) states that "schedul[ing orders] shall not be modified except on a showing of good cause."

2  The lynchpin of this analysis is whether the party seeking the modification has been diligent:

> Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment . . . . *Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.* Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. *If that party was not diligent, the inquiry should end*.

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (internal quotations and citations omitted) (emphasis added). Here, the Case Management Order clearly provided that December 1, 2005 was the fact discovery cut-off. Even if Abel's counsel believed that the discovery cut-off was in February 2006, he did not conduct any discovery for nine months after the Case Management Conference. Accordingly, he cannot show the "good cause" necessary to modify the Case Management Order. *See Zivkovic v. Southern California Edison Co.,* 302 F.3d 1080, 1087 (9th Cir. 2002) (denying motion to extend discovery where plaintiff's "counsel did not seek to modify [scheduling] order until four months after the court issued the order"). The court thus denies Abel's motion to the extent it seeks permission to engage in full-blown discovery or continue the trial date.

     However, as indicated at the February 10, 2006 hearing, the court grants Abel's motion in part. Abel claims that Hafner told him that he would memorialize IBM's commitment not to fire him in a letter in his personnel file. Abel Decl. ¶ 8. The court ordered IBM to provide Abel with a copy of his employment file and a declaration from its custodian of records indicating that he had searched for Hafner's letter. The court then gave Abel ten days to reply.

     IBM has now produced Abel's personnel file and the declaration from its custodian of records. Neither party contends that the personnel file contains the Hafner letter. Instead, Abel and his counsel have filed declarations questioning whether IBM produced a full copy of the file. *See* Docket Nos. 42, 43. Abel also contends that "all managers keep a personal folder in their desk filing drawer" that is where Hafner's letter "should be." Abel Supp. Decl. ¶ 8. The court is satisfied based on IBM's records custodian's sworn declaration that Hafner's letter is not in Abel's personnel file. The court is also unpersuaded by Abel's claim that the letter is likely in Hafner's personal folder. Abel's original declaration states that "Hafner said that he would put a letter in *my* personnel folder

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
—C-04-03961 RMW
DOH                                                                                   7


so that any new manager would be aware of our agreement to bridge my retirement." Abel Decl. ¶ 8 (emphasis added). At no point prior to IBM producing Abel's personnel folder did Abel ever mention Hafner's personal folder. Because Abel has failed to produce evidence raising a genuine issue of material fact, the court grants IBM's motion for summary judgment.

### III. ORDER

For the foregoing reasons, the court grants IBM's motion for summary judgment.

DATED:     3/9/06                            /s/ Ronald M. Whyte
                                             RONALD M. WHYTE
                                             United States District Judge

1 | **Notice of this document has been electronically sent to:**

2 | **Counsel for Plaintiff(s):**

3 | Ismael D. Perez          easy@perezlawoffice.com

4 | **Counsel for Defendant(s):**

5 | Scott G. Lawson          scottlawson@quinnemanuel.com
    Carlos A. Trujillo       carlostrujillo@quinnemanuel.com
6 | Christina Leigh Wu       christinawu@quinnemanuel.com

7 |
    Counsel are responsible for distributing copies of this document to co-counsel that have not
8 | registered for e-filing under the court's CM/ECF program.

11 | **Dated:**       3/9/06                              DOH
                                                **Chambers of Judge Whyte**